UNITED STATES, Appellee,

v.

Charles R. COMBS Sr., Technical
Sergeant, U.S. Air Force,
Appellant.

No. 96–1246.
Crim.App. No. 29305.

U.S. Court of Appeals for
the Armed Forces.

Argued June 5, 1997.

Decided Sept. 30, 1997.

Cox, C.J., filed concurring opinion.

Crawford and Gierke, JJ., filed dissenting opinions.

For Appellant: *Captain W. Craig Mullen*
(argued); *Lieutenant Colonel Kim L. Sheffield* and *Captain Harold M. Vaught* (on
brief); *Colonel David W. Madsen.*

For Appellee: *Major LeEllen Coacher* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

In 1990, appellant, then a technical sergeant (E–6) in the Air Force, was tried by a general court-martial consisting of members at Kadena Air Base, Okinawa, Japan. Contrary to his pleas, he was found guilty of the unpremeditated murder of his 18–month–old son, battery of his 3–year–old daughter, and willful disobedience of a lawful order not to be alone with his children, in violation of Articles 118, 128, and 91, Uniform Code of Military Justice, 10 USC §§ 918, 928, and 891, respectively. On September 26, 1990,

he was sentenced to a dishonorable discharge, confinement for 50 years, total forfeitures, and reduction to airman basic.

On October 8, 1992, the Court of Military Review[1] set aside the findings of guilty to unpremeditated murder but affirmed the findings of guilty to battery and disobedience of an order. It also set aside the sentence and ordered a rehearing if practicable. 35 MJ 820. On November 4, 1992, the Judge Advocate General of the Air Force certified this case to our Court for review under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989). On June 15, 1994, this Court affirmed the decision of the Court of Military Review. 39 MJ 288.

A rehearing on the unpremeditated-murder charge and the sentence was held before a general court-martial composed of a military judge sitting alone at Bolling Air Force Base, Washington, D.C., between January and March 1995. Appellant pleaded guilty and was found guilty of the unpremeditated murder of his son, in violation of Article 118. On March 22, 1995, he was sentenced to a dishonorable discharge, 21 years' confinement, and reduction to the rank of airman basic. On August 10, 1995, the convening authority approved the sentence except for confinement in excess of 20 years, in accordance with a pretrial agreement. On July 30, 1996, the Court of Criminal Appeals affirmed in an unpublished opinion.

■ On March 4, 1997, this Court granted review on the following issue of law:

WHETHER APPELLANT IS ENTITLED TO CONFINEMENT CREDIT FOR THE PERIOD BETWEEN HIS FIRST TRIAL AND THE SUBSEQUENT REHEARING BECAUSE HIS CONFINEMENT WAS NOT PROPERLY TOLLED OR BECAUSE HE WAS SUBJECT TO PUNISHMENT IN VIOLATION OF ARTICLE 13, UCMJ.

We hold that 20–months' additional sentence credit is warranted as a result of appellant's punishment by military authorities after his first court-martial sentence was set aside but before his second court-martial sentence was imposed. *See generally United States v. Cruz*, 25 MJ 326 (CMA 1987).

■ The Court of Criminal Appeals stated the following concerning this issue:

*Confinement Credit*

We released our first opinion setting aside appellant's conviction of Charge II, unpremeditated murder, and the sentence on October 8, 1992. On October 21, 1992, appellant was released from the United States Disciplinary Barracks (USDB) notwithstanding the government's decision to certify our decision to our superior court. During the pendency of the government's unsuccessful appeal ... [but prior to] appellant's post-trial confinement following the rehearing on March 22, 1995, he was assigned as a "casual" to Lowry Air Force Base (AFB), Colorado. With the closure of Lowry AFB, appellant was transferred to the Charleston Navy Brig, Charleston, South Carolina, in July of 1993. A few months later he was placed on appellate leave.

Appellant first asks for confinement credit for the entire period of time between his release from the USDB and March 22, 1995. He premises this argument on his conclusion that the period of confinement originally assessed, 50 years, was not properly "tolled" by the convening authority, who, appellant avers, was the only one empowered to suspend the running of appellant's confinement time. The transparent difficulty with this argument is that with our original decisions, appellant no longer had an approved period of confinement to serve. He was trapped in the twilight of the court-martial process, so to speak, adjudicated but unsentenced. He cannot be credited with confinement he did not serve on a sentence which did not then exist.

1. *See* 41 MJ 213, 223 n.* (1994).

Appellant next contends that he should be given an unspecified amount of confinement credit as a result of punishment he alleges he received in violation of Article 13, UCMJ, 10 USC § 813. In support of this contention, he has submitted a 24 page, single-spaced affidavit, in which he relates his treatment at Lowry and Charleston. We will not detail them here, except to mention in passing that we do not view the requirement to go to work each morning at 0730, keep his room and the common areas clean, or the lack of a private bath and shower to be so oppressive as to constitute illegal pretrial punishment.

*More troubling, however, is the allegation that appellant was ordered to remove his technical sergeant (TSgt) rank from his uniform, to get a new identification card showing him in the grade of E–1, airman basic, and that during the period of time he spent at Lowry and Charleston he was forbidden to wear his rank.*

As is its wont, the government argues strenuously that, because appellant was not in pretrial confinement, the provisions of Article 13 do not apply. In its view, *United States v. Cruz*, 25 MJ 326 (CMA 1987) should be confined to its "bad facts." The government then takes aim at our holding in *United States v. Washington*, 42 MJ 547 (A.F.Ct.Crim.App.1995), arguing that with that case "the concept of unlawful pretrial punishment appears to have inexplicably broken free of its statutory and constitutional moorings." It presses us to limit Article 13 analysis to those cases where an accused has been subjected to unlawful pretrial punishment while in confinement.

To be sure, *Washington* strains against the outer limits of Article 13 jurisprudence. *But it, along with Cruz, signals that the courts will not tolerate egregious, intentional misconduct by command where there is no evidence of a legitimate, nonpunitive objective for the conduct complained of, the apparent singling out of an accused for personal humiliation, and restrictions on liberty so oppressive as to be more consistent with the status of prisoner. On the other side of the coin, we have* consistently adhered to the admonition in *United States v. Palmiter*, 20 MJ 90, 97 (CMA 1985), that the failure to voice a contemporaneous complaint of the alleged mistreatment is powerful evidence that it was not unlawful.

We have held that stripping an individual of his authorized rank was improper, but "not such an onerous condition as to require additional administrative credit toward the sentence to confinement." *United States v. Marston*, 22 MJ 850, 851 (AFCMR 1986). However, we held as we did because Marston had not been singled out for personal humiliation. Nobody should misconstrue our holding in that case as an endorsement of the practice, nor should it be assumed that, where there is evidence of personal animus, appropriate remedial action will not be forthcoming. *This case is close.* According to appellant's affidavit, after he was released from the USDB and arrived at Lowry AFB, the squadron first sergeant told him to get his uniform squared away, including sewing on his technical sergeant stripes. However, Technical Sergeant Jordan, according to appellant, subsequently ordered him to cut them off and directed him to get a new identification card, showing him to be an airman basic.

At the time this took place, appellant's conviction for assault consummated by a battery on his 3–year–old daughter and his disobedience of the lawful order of a noncommissioned officer remained intact. *However, he did not have an approved sentence for that misconduct and was entitled to wear the rank of technical sergeant and to be paid in that grade effective as of our October 8, 1992, decision until such time as he had an approved sentence.*

The unpremeditated murder charge was being appealed to our superior court, thereby confronting the government with a Hobson's choice. Ordinary appellate leave might well have seemed imprudent given the seriousness of the pending charge (although subsequent events would prove that appellant could be trusted to appear

for trial). Pretrial confinement might have proved problematic given the duration associated with the appeal and the speedy trial requirements of RCM 707(a) and RCM 707(b)(3)(D). The government failed to apply for a stay pursuant to RCM 707(c). As a result, appellant found himself in a *sui generis* status for which the Air Force was ill-prepared. Still, considering appellant's failure to voice a prompt complaint over the issue of rank, and his silence at his rehearing, we attribute the dispute over the rank to the ambiguity of appellant's position, and the lack of clear guidance from competent authority as to his legal status, *not* to a punitive intent. We do so confident that appropriate authority will take cognizance of our opinion in this case, and ensure against a recurrence. Appellant's request for confinement credit is, therefore, denied.

Unpub. op. at 4–6 (emphasis added).

———

Article 13 states:

**§ 813. Art. 13. Punishment prohibited before trial**

*No person, while being held for trial,* may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

(Emphasis added.) We agree with the Court of Criminal Appeals that reduction in rank is a well-established punishment, which unlawfully imposed, warrants sentence relief under this codal provision. *See United States v. Cruz, supra;* see generally W. Winthrop, *Military Law and Precedents* 431–32 (2d ed. 1920 Reprint). Yet, the appellate court below decided to deny him this relief on the basis of the possibility of a nonpunitive intent on the part of military authorities in reducing him in rank. *See generally Palmiter,* 20 MJ at 95 (opinion of Cox, J.). We hold that the defense's affidavit is unrebutted and unequiv-

ocally established the punitive intent of command authorities towards this servicemember. *See United States v. Henry,* 42 MJ 231, 235 (1995); *United States v. Huffman,* 40 MJ 225, 228 (CMA 1994) (*de novo* review of punitive-intent question); *see also United States v. Craig,* 28 MJ 321, 325 (CMA 1989)("speculation" whether convening authority saw defense clemency materials prior to post-trial action will not be "tolerated").

Nevertheless, the Government asserts that this pretrial-punishment prohibition was not even applicable to appellant because he was not in pretrial confinement at the time of the complained of treatment by military authorities. We note that Article 13 on its face is not limited to pretrial confinees, but instead applies to servicemembers "held for trial." Moreover, in *United States v. Cruz, supra,* we applied this codal provision to arrestees who were not yet in pretrial confinement. Finally, appellant served some 2 years in confinement as a convicted murderer. In view of his later status as one awaiting a rehearing on that murder charge (unpremeditated murder) and a new sentence hearing on the other charges, complete freedom of movement was not afforded him. Accordingly, we agree with the Court of Criminal Appeals that this codal protection was applicable in these circumstances.

■ The Government finally has argued that, assuming appellant has standing to raise his legal complaints under Article 13, he waived these complaints by failing to raise them at his rehearing. He cites our decision in *United States v. McCants,* 39 MJ 91, 93 (1994) and RCM 905(e) and 906(b)(8), Manual for Courts–Martial, United States, 1984. Under the unusual circumstances of this case, we do not find waiver of these Article 13 issues (*see generally United States v. Hilton,* 27 MJ 323, 326 (CMA 1989)), although such a finding in future cases might be appropriate.

Appellant had served some 2 years of his original 50–year sentence when he was released from confinement on October 21, 1992. Although his murder conviction and his prior court-martial sentence were set aside, his two other convictions were not. As noted by

the Court of Criminal Appeals, he was "trapped in the twilight of the court-martial process." Thus, his legal status between trials was so unique that neither the Government nor appellant were fully aware of his legal rights. *See also Moore v. Akins*, 30 MJ 249, 253 (CMA 1990) (decisions of courts of criminal appeals must be taken into account for purposes of post-trial confinement even before they have become "final"). In these circumstances, there could be no knowing waiver of rights. *See also Huffman*, 40 MJ at 227 (fully developed on-the-record waiver of illegal-punishment issue required).

In sum, we conclude that appellant has presented an essentially unrebutted case for sentence relief under Article 13 and *United States v. Cruz, supra. See generally United States v. McCarthy*, 47 MJ 162 (1997). Appropriate credit, however, must be limited to the period of time which he was on active duty and suffered the ignominy and other harm from this unlawful demotion. The record reveals this prejudice occurred from October 21, 1992, to October 8, 1993, and from July 19, 1994, to March 22, 1995, a total of 20 months.

The decision of the United States Air Force Court of Criminal Appeals is reversed to the extent that it holds that appellant is not entitled to confinement credit. Appellant will be credited with service of 20 months. In all other respects the decision below is affirmed.

Judge EFFRON concurs.

COX, Chief Judge (concurring):

My dissenting colleagues continue their quest to impose waiver or forfeiture of rights upon servicemembers who fail to raise presentence punishment, confinement, or deprivation issues at trial. *See United States v. Huffman*, 40 MJ 225 (CMA 1994). I have no problem imposing waiver, provided the waiver is knowingly made, either on the record or in some other form commonly accepted in our system of jurisprudence, such as in a pretrial agreement.

In this case five judges of this Court cannot agree. What is it we would have appellant knowingly waive?

This case is simple to me. Appellant was deprived of his status as an ordinary Technical Sergeant during the pendency of his rehearing. The point is *the fact* that his rank was reduced, not whether such reduction was right or wrong as a matter of law. Further, it is unrebutted that his freedom was substantially burdened until he was placed on appellate leave and that his pay was reduced. His allegations to that effect are not rebutted by the Government. Under these circumstances, and in my judgment, he is entitled to pretrial credit for this interim period— whether we view this as illegal punishment under Article 13, Uniform Code of Military Justice, 10 USC 813, or ordinary pretrial deprivation of liberty tantamount to confinement, *United States v. Allen*, 17 MJ 126 (CMA 1984).

Therefore, I join Judges Sullivan and Effron in ordering that credit be given.

CRAWFORD, Judge (dissenting):

This case demonstrates the rationale for the raise-or-waive rule. *United States v. Huffman*, 40 MJ 225, 228–29 (CMA 1994)(Crawford, J., joined by Gierke, J., dissenting in part and concurring in the result). Now the Air Force will have to call tens of people who were originally stationed at Lowry Air Force Base near Denver, Colorado, and Charleston AFB, South Carolina, to determine whether appellant's restriction was a violation of Article 13, Uniform Code of Military Justice, 10 USC § 813.

Appellant, who was convicted of the unpremeditated murder of his 18–month–old son and the battery of his 3–year–old daughter, together with the willful disobedience of a lawful order not to be left alone with the children, had his original conviction and sentence which included confinement for 50 years set aside. He was not placed in pretrial confinement pursuant to RCM 305, Manual for Courts–Martial, United States (1994 ed.). Now, years after his court-martial, he submits a 24–page affidavit complaining about his conditions of restriction. His affidavit does not contain one sentence of

remorse as to the underlying circumstances surrounding his conviction.

The government brief, as shown below, sets forth chronologically what happened in this case:

| Date | Event |
|---|---|
| 26 September 1990 | Original sentence adjudged |
| 26 September 1990 | Appellant enters confinement |
| 10 June 1990 [sic] | Original sentence approved |
| 8 October 1992 | Air Force Court decision setting aside unpremeditated murder finding and sentence |
| 21 October 1992 | Appellant released from confinement at United States Disciplinary Barracks; assigned to 3320th CRS, Lowry AFB |
| 4 November 1992 | Air Force Judge Advocate General certifies issue to then-Court of Military Appeals* |
| November & December 1992 | Appellant granted 52 days leave over Christmas and Thanksgiving |
| 19 July 1993 | Appellant transferred to Detachment 3, Air Force Security Police Agency, Charleston, South Carolina |
| 8 October 1993 | Appellant placed on required leave |
| 15 June 1994 | Court of Military Appeals decision affirming set aside of unpremeditated murder finding and sentence |
| 19 July 1994 | Appellant returned to active duty |
| 3 August 1994 | GCMO No. 300, HQ 11th Support Wing, Bolling AFB promulgated, setting aside Appellant's conviction for unpremeditated murder and Appellant's sentence and ordering a rehearing. |
| 2 November 1994 | Original unpremeditated murder charge referred for rehearing; additional charges referred |
| 20 January 1995 | Appellant arraigned |
| 22 March 1995 | Appellant sentenced after guilty plea to unpremeditated murder and rehearing on sentence |
| 10 August 1995 | Convening authority approves sentence; granting credit for any portion of punishment served from 26 September 1990 to 8 October 1992 |
| 30 July 1996 | Air Force Court of Criminal Appeals affirms case upon rehearing |
| 4 March 1997 | Petition for review granted by Court of Appeals for the Armed Forces |

Answer to Final Brief at 1–2.

---

* Since decisions of the Courts of Criminal Appeals certified to this Court do not take effect because of the mandatory appeal, query whether appellant should be given credit for any pretrial confinement from October 21, 1992, until October 8, 1993. *But see Moore v. Akins*, 30 MJ 249 (CMA 1990). The analogy employed in *Moore, supra* at 251, comparing our system to the Federal bail system, is inaccurate because the military does not have a bail system.

Probably, the practical reason for the decision in *Moore* is the lengthy delay between appeal from the decisions of the courts below and this Court's resolution of those cases. In the future, when an appellant wins below and the case is certified, there should be expedited review at this Court.

Appellant contends that his restriction upon release from confinement on October 21, 1992, until he was sentenced again on March 22, 1995, should be converted to pretrial-confinement credit.

The defense has a two-fold argument. First, confinement runs from the date it is adjudged. Second, in any event, the conditions were such as to amount to unlawful confinement and therefore entitle appellant to credit.

Regarding appellant's argument that the Government failed to toll his confinement, the Government responds that confinement was tolled when the approval of his sentence was set aside by the court below. As to the argument that the conditions. were tantamount to confinement, the Government asserts that this issue was not raised at trial where it could be fully litigated and, thus, it was waived absent plain error.

The onerous conditions appellant complains of both at Lowry AFB and Charleston AFB are as follows: he was given little privacy, had to share the telephone with inmates, had to wear battle dress uniforms, and was not permitted to wear his rank as a technical sergeant. Appellant also claims that while at Lowry AFB, he could not travel beyond 100 miles of Denver, Colorado; could have no visitors in the room, no alcohol, no leaves, and no off-base residence; and had a curfew. These conditions remained the same when he was transferred to Charleston AFB, although there he was also assigned to perform tasks such as cutting grass and house-keeping details.

But appellant admits certain privileges, including travel within 100 miles of the base. While he was not permitted visitors in his room, his wife did come to visit him on occasion. Additionally, he was allowed about 52 days of leave over Thanksgiving and Christmas. Appellant was not required to have an escort and did not have to march in formation. Although appellant had a curfew and was required to report to the Desk Sergeant, he was not subjected to the lights-out policy. Appellant enjoyed a full-time job at the base gymnasium while at Lowry AFB and was allowed off-duty employment while at Charleston AFB.

Appellant had nearly a 2–year period of time to seek redress from the commander, the inspector general, the military judge, or the convening authority during post-trial submissions. He did not avail himself of any of these opportunities.

While the majority of this Court in *United States v. Huffman*, 40 MJ 225, 226–27 (1994), refused to apply waiver to failure to raise an Article 13 issue at trial in that case, they indicated that failure to raise the issue is evidence that there was no violation. Waiver does not apply when there is plain error that affects the substantial rights of the accused. *United States v. Olano*, 507 U.S. 725, 732–36, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). Not allowing appellant to wear his original rank was not so onerous as to constitute plain error negating waiver of the issue in this case. The deferment of confinement does not restore appellant to his original grade. *Cf.* Art. 57(d), UCMJ, 10 USC § 857(d); RCM 1101(c), Manual for Courts–Martial, United States (1995 ed.). The facts set forth in appellant's own affidavit established that he was not subject to illegal pretrial confinement, and there is no proffer of an intent to punish or stigmatize appellant while awaiting trial. *See United States v. Phillips*, 42 MJ 346, 349 (1995). For these reasons, I would affirm the decision of the court below.

GIERKE, Judge (dissenting):

I disagree with the majority's decision to give appellant 20 months' confinement credit. I agree with Judge Crawford that we should apply waiver.

This case represents sandbagging at its worst. Appellant did not raise the pretrial-punishment issue at his sentence rehearing and did not complain to the convening authority who approved the results of this rehearing. He raised the issue for the first time before the Air Force Court of Criminal Appeals, 2 years after the events he now contends amounted to pretrial punishment. It is now more than 3 years after the fact. Appellant has virtually ensured that the Government will not be able to reconstruct what happened. In my view, appellant has forfeit-

ed his right to complain. *See* RCM 905(e), Manual for Courts–Martial, United States (1995 ed.) (failure to make motion for appropriate relief constitutes waiver); *United States v. McCants,* 39 MJ 91, 93 (CMA 1994) (request for credit for pretrial confinement waived if not raised at trial).

Furthermore, even if the issue was not waived, in my view appellant would not be entitled to 20 months' sentence credit. The principal opinion rests on what I believe to be a faulty premise—that appellant's rank was automatically restored when the Court of Criminal Appeals set aside his first conviction on October 8, 1992, even though the case was certified to our Court and eventually affirmed on June 15, 1994. The principal opinion concludes that appellant should have been allowed to draw the pay and wear the stripes of an Air Force Technical Sergeant until October 8, 1993, when he was placed on appellate leave, and from July 19, 1994, when he was recalled to active duty, until March 22, 1995, when he was sentenced at his rehearing.

In my opinion the majority is wrong with respect to the period from October 8, 1992, until October 8, 1993. Under the provisions of Article 58a, Uniform Code of Military Justice, 10 USC § 858a, TSgt Combs was reduced to pay grade E–1 by operation of law when the convening authority approved his original sentence to confinement.

Appellant did not, in my view, automatically revert to pay grade E–6 when the court below reversed his conviction. Since the Judge Advocate General certified that decision to our Court, the decision of the court below did not take effect until some time after our Court affirmed it on June 15, 1994. Opinions of the Court of Criminal Appeals are "not self-executing." *See United States v. Miller,* 47 MJ 352 (1997); *United States v. Kraffa,* 11 MJ 453, 455 (CMA 1981); *United States v. Tanner,* 3 MJ 924, 926 (ACMR 1977). They do not take effect until the

Judge Advocate General issues a mandate under Article 66(e), UCMJ, 10 USC § 866(e). No mandate may be issued if a certificate is pending before our Court. Therefore, appellant was still serving in pay grade E–1, not E–6, while his case was pending before our Court. Accordingly, requiring him to remove his stripes and draw the pay of an E–1 was not punishment, but a correct application of the law.

Article 57(d), UCMJ, 10 USC § 857(d), and this Court's decision in *Moore v. Akins,* 30 MJ 249 (1990), recognized the need for the military equivalent of bail to permit release from confinement during appellate review. Deprivations of rank and pay can be restored if a sentence is set aside, but confinement cannot. *See* Art. 58a(b) (provides for restoration of rights, privileges, pay, and allowances if reduction is set aside).

However, *Moore v. Akins, supra,* does not, in my view, support the majority position. *Moore* dealt only with confinement and has nothing to do with reduction in pay grade. The basis of that decision was Article 57(d), dealing only with deferment of confinement. 30 MJ at 251–53. There is no authority under the UCMJ to defer reduction in grade while appellate review is pending.

Accordingly, even if the majority opinion is correct in concluding that appellant was deprived of his rank in violation of Article 13, UCMJ, 10 USC § 813, the violation occurred only during the 8–month period after appellant was recalled from appellate leave until he was again sentenced at his rehearing and his reduction was again executed. At most, appellant is entitled to a credit for 8 months, not 20 months.

I believe the majority misreads Articles 57 and 58a, fails to recognize our precedent in *Kraffa,* and permits blatant sandbagging of appellate courts. Accordingly, I dissent.