# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**THE COURT EN BANC**

**DUSTIN M. CLARK**
**AIRMAN (E-3), U.S. NAVY**

**v.**

**UNITED STATES OF AMERICA**

**NMCCA 201400232**
**Review of Petition for Extraordinary Relief in the Nature of a**
**Writ of Habeas Corpus**

**Sentence Adjudged:** 21 February 2014.
**Military Judge:** CDR Robert P. Monahan, Jr., JAGC, USN.
**Convening Authority:** Commandant, Naval District Washington, Washington Navy Yard, Washington, DC.
**Staff Judge Advocate's Recommendation:** LCDR J.D. Pilling, JAG, USN.
**For Petitioner:** Capt Michael Magee, USMC.
**For Respondent:** LT Jetti Gibson, JAGC, USN; Capt Matthew M. Harris, USMC.

**24 September 2015**

---

**OPINION OF THE COURT**

---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

BRUBAKER, S.J., delivered the opinion of the court in which MITCHELL, C.J., MARKS, J., PALMER, J., and CAMPBELL, J., concur. FISCHER, S.J., filed a dissenting opinion joined by HOLIFIELD, J..[1]

BRUBAKER, Senior Judge:

---

[1] Judge KING and Judge RUGH did not participate in the review of this case.

The petitioner asks that we direct his immediate release from confinement through a Writ of *Habeas Corpus*. Because we find his continued confinement to be lawful, we decline to do so.

## Background

A military judge sitting as a general court-martial convicted the petitioner, contrary to his pleas, of rape and forcible sodomy in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925. The military judge sentenced the appellant to seven years' confinement, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.

On 14 July 2015, a panel of this court issued a decision finding the petitioner's convictions factually insufficient and thus set aside the findings and sentence and dismissed the charges with prejudice. *United States v. Clark*, 2015 CCA LEXIS 287, unpublished op. (N.M.Ct.Crim.App. 14 Jul 2015) (per curiam). On 13 August 2015, the Government requested *en banc* reconsideration of this decision, which we denied on 18 August. Despite the ruling in his favor, the petitioner has remained in confinement since his court-martial adjourned.

After the petitioner filed his Petition for Extraordinary Relief in the Nature of a Writ of H*abeas Corpus*, the panel ordered the Government to show cause why the requested relief should not be granted. After responsive pleadings by both parties to the show cause order, we *sua sponte* decided to consider the case *en banc*. On 18 September 2015, we issued an order denying the writ but indicating an opinion would follow. On 21 September 2015, the petitioner filed a writ-appeal petition based on our denial with the Court of Appeals for the Armed Forces (CAAF).

## Analysis

As neither party disputes, we have jurisdiction to consider this petition under the All Writs Act, 28 U.S.C. § 1651(a). *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999); *Loving v. United States*, 62 M.J. 235, 239 (C.A.A.F. 2005).

The United States Supreme Court instructs "that the essence of *habeas corpus* is an attack by a person in custody upon the legality of that custody, and that the traditional function of

2

the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Similarly, the CAAF has called the writ of *habeas corpus* the "traditional remedy for unlawful imprisonment." *Waller v. Swift*, 30 M.J. 139, 142 (C.M.A. 1990) (citations omitted). This then is an assessment not of whether the petitioner has presented a meritorious case as to why he *should* be released, but rather whether his confinement is *illegal*. Because the petitioner's continued confinement pending the Judge Advocate General (JAG) of the Navy's decision to accept or to challenge this court's decision is consistent with the procedures established within the UCMJ and sanctioned by binding precedent, we deny relief.

Unlike many civilian courts, military Courts of Criminal Appeals (CCAs) do not issue mandates; those are the JAGs' purview as our decisions are not "self-executing." Instead, a CCA decision remains "inchoate" until the appellate process is complete and the service JAG returns the case to an appropriate CA for action consistent with the final appellate decision. *United States v. Miller*, 47 M.J. 352, 361 (C.A.A.F. 1997).

The fact that a legal determination is based on factual sufficiency does not alter its inchoate nature. Like any legal determination, it is subject to appeal to the CAAF. While the CAAF is constrained regarding CCAs' factual findings, it can still review findings of factual sufficiency to ensure the lower court applied the correct law. *See United States v. Leak*, 61 M.J. 234, 245 (C.A.A.F. 2005); *see also, United States v. Nerad*, 69 M.J. 138, 140 (C.A.A.F. 2010) ("while CCAs have broad authority under Article 66(c), UCMJ, to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal——not equitable——standards, subject to appellate review." (citation omitted)).

An appellant has an interest in a favorable but inchoate CCA decision, but that interest "only becomes sufficiently weighty to warrant action" once the JAG has decided on a course of action (abide by the CCA ruling or challenge it before the CAAF) or his time for doing so has expired. *United States v. Kreutzer*, 70 M.J. 444, 446 (C.A.A.F. 2012). Regulations grant the JAG a concrete amount of time to make his determination——60 days after the date of the CCA decision or 30 days after the CAAF has granted a petition for review. CAAF RULES OF PRACTICE AND PROCEDURE Rule 19(b)(3). When the Government has timely sought reconsideration of the CCA decision, the 60 days is computed from the date of the CCA's final action on the petition for reconsideration. *Id.*, Rule 34(a).

3

Pending the JAG's decision, "an accused remains in confinement because the opinion below is inchoate.  This reflects Article 66(e), which does not require the [JAG] to provide the [CA] with notification and instructions to release the accused or conduct an RCM 305 hearing 'unless' there will not be further consideration by other authorities . . . ."  *Miller*, 47 M.J. at 361-62.  Only after the JAG has had the opportunity to make his decision does "an accused's interest in the favorable decision of the court below" require "either that the accused be released in accordance with that decision or a hearing on continued confinement be conducted under RCM 305."  *Id.* at 362 (citing *United States v. Turner*, 47 M.J. 348 (C.A.A.F. 1997) and *Moore v. Akins*, 30 M.J. 249 (C.M.A. 1990)).

Statutory provisions under Article 57a, UCMJ, reinforce this scheme and evince Congressional intent to provide those in the appellant's position a process to determine the propriety of continued confinement only *after* the service JAG has had the opportunity to accept or to challenge a CCA decision.  The first of these provisions is what is now Article 57a(a), granting discretion to a CA or other appropriate official to defer confinement until the sentence is ordered executed.  Congress enacted this provision, originally as Article 57(d), to authorize prisoners a "means of release from confinement during appellate review" and in so doing provided "for the first time a procedure similar to release on bail pending appeal in the civilian courts."  *Moore*, 30 M.J. at 251-52 (citations omitted).

Even with Article 57(d), there was no explicit authority to defer confinement after the CA took action on a case.  But in 1990, the United States Court of Military Appeals (CMA) considered a *habeas corpus* petition in a case where the appellate court below had ruled in favor of the petitioner, dismissing all charges and specifications.  The case was pending CMA review following a JAG certification under Article 67(a)(2).  *Moore*, 30 M.J. at 249-50.  The CMA, citing Congress's desire that "a practical means be made available to release accused servicemembers from confinement pending appeal in meritorious cases[,]" granted Moore's petition and ordered his release pending completion of appellate review.  *Id.* at 253.

In direct response to the *Moore* decision, Congress passed Article 57a(c), providing that when a sentence to confinement has been ordered executed, but the case is pending review by the CAAF under Article 67(a)(2), "the Secretary concerned may defer further service of sentence to confinement while that review is

4

pending." The Congressional Record summarizes the *Moore* holding as directing a prisoner's release "from confinement pending the government's appeal unless it can be shown that the accused is a flight risk or a potential threat to the community . . . ." 141 Cong Rec S 5805 § 557 (April 27, 1995). To codify this ruling, Congress gave Service Secretaries the ability to "defer the service of an accused's confinement when a [JAG] orders a case reversed by a [CCA] to be sent to [the CAAF] for further review under article 67(a)(2)." *Id*. This evinces Congressional intent to restrict the option of Secretarial deferment until *after* a case is certified to our higher Court.

As illustrated in *Miller* and *Kreutzer*, ever since *Moore* and the enactment of Article 57a(c), the CAAF has consistently held that a CCA opinion favorable to a service member does not entitle him to be released or to the equivalent of an R.C.M. 305 hearing until the JAG has had the opportunity to send the case to the CAAF. This, we believe, is in recognition of the JAG's executive role and the finite period of time between a CCA decision and action by the JAG—in contrast to the relatively lengthy and indefinite period of time for the CAAF to consider the merits of an appeal.[2] *See Miller*, 47 M.J. at 361-62.

The Petition for Extraordinary Relief in the Nature of a Writ of *Habeas Corpus* is, accordingly, DENIED.

Chief Judge MITCHELL, Judge MARKS, Judge PALMER, and Judge CAMPBELL concur.


FISCHER, Senior Judge (dissenting):

I would grant the petition and release the petitioner from confinement, accordingly I respectfully dissent. In short I find the petitioner's case is closely aligned with the facts and procedural setting in *Moore v. Akins,* 30 M.J. 249 (C.M.A. 1990) and distinguishable from those in *United States v. Miller,* 47

---

[2] We acknowledge that since *Miller* and *Kreutzer* were decided, the time allowed for JAGs to send cases to the CAAF has expanded from 30 to 60 days. But this does not change our analysis of Congressional intent and CAAF precedent supporting that an appellant may remain in confinement pending the JAG's decision on a CCA ruling favorable to him. And in *Kreutzer*, despite 110 days elapsing between the CCA decision and JAG certification, even the dissent did not believe that Kreutzer was entitled an R.C.M. 305 hearing until the date of JAG certification. *Kreutzer*, 70 M.J. at 450 (Erdmann, J., dissenting).

M.J. 352 (C.A.A.F. 1997)[1] and *United States v. Kreutzer,* 70 M.J. 444 (C.A.A.F. 2012).[2]

The court in *Moore* directly spoke to the "inchoate" nature of service court decisions in terms of *habeas corpus* relief:

> Clearly, the legislative intent was that a practical means be made available to release accused servicemembers from confinement pending appeal in meritorious cases. This was the reason for enacting Article 57(d). We are convinced that Congress did not intend that the outcome should hinge on any distinction between an "inchoate" decision of a Court of Military Review and a mandate issued by a federal court of appeals. Indeed, one of the main purposes of the Military Justice Act of 1968 was to transmute the "boards of review" into "courts"; and we conclude that the decisions of these "courts" must be taken into account for purposes of post-trial confinement even before they have become "final."

30 M.J. at 253.

As the majority rightly states, enactment of Article 57a, UCMJ, addressed the circumstance faced in *Moore* and now permits "the Secretary concerned to defer [the appellant's] further service of sentence to confinement" during appellate review following certification by the service Judge Advocate General pursuant to Article 67(a)(2), UCMJ. But, the UCMJ does not address deferment of confinement following issuance of a service court decision pending a certification determination by the Judge Advocate General. The petitioner in *Moore* was limited to a writ of *habeas corpus* in seeking relief from confinement. So too here the petitioner's lone avenue to challenge his continued

---

[1] The *Miller* court concluded that the appellant was not entitled to additional sentencing credit for twenty-one days of confinement he served after receiving a favorable decision from a service criminal court of appeals, a decision also set aside by the Court of Appeals for the Armed Forces. Apart from obvious distinctions that the *Miller* court was not addressing a *habeas* petition and that the petitioner here is on his seventy-first vice his twenty-first day of confinement after our opinion issued, unlike our sister service court in *Miller*, we affirmed no part of the findings or sentence in the petitioner's case.

[2] Footnote 1 of the *Kreutzer* majority opinion states, "[t]he *Miller* majority cited *Moore v. Akins,* 30 M.J. 249 (C.M.A. 1990), a case in which the Court of Military Review had dismissed all charges on statute of limitations or factual sufficiency grounds, leaving the accused without a conviction. Because Appellant here remained convicted of a number of offenses, *Moore* is also inapplicable to this case." 70 M.J. at 447.

confinement at this procedural juncture is through a writ of *habeas corpus* to our court.

The court in *Moore* reiterated our authority to entertain such a writ, stating, "[i]n our view, the Court of Military Review-as long as [the Petitioner's] case was pending there-had authority under the All Writs Act, 28 USC § 1651, to an enter an order deferring service of confinement pending completion of appellate review."  *Id.*

As the court did in *Moore,* I find the petitioner's case meritorious.  He has served nearly nineteen months' confinement and has received a completely favorable decision from our court concluding that the Government failed to prove his guilt beyond a reasonable doubt and dismissing all charges with prejudice. For nearly two years he was under investigation or pending trial on the charges for which he was eventually convicted, but he was not placed in pretrial confinement.  There is no indication or evidence in the record that during that time, any concern existed that he was a flight risk or danger to others. Certainly the Court of Appeals for the Armed Forces must review this case pursuant to Article 67(a)(2), UCMJ, if the Judge Advocate General certifies it to that court.  But, as our court previously held, "[w]e cannot allow the Government to continue . . . confinement of the Petitioner on the hopeful speculation that the [court's] decision will be reversed eventually by a higher appellate court."  *Frage v. Edington*, 26 M.J. 927, 929 (N.M.C.M.R. 1988).[3]

---

[3] Recognizing they operate within a different procedural and legal framework, federal courts use the writ of *habeas corpus* to grant unconditional release from confinement in instances where the Government fails to prove the guilt of the accused beyond a reasonable doubt, including cases where the Government can seek appeal or a rehearing. *See Fiore v. White*, 531 U.S. 225, 228 (2001) (per curiam) (holding the defendant's "conviction and continued incarceration  . . . violate due process" when the government failed to prove one of the elements of the crime); *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006) (affirming district court's decision to grant immediate release from confinement when the evidence was insufficient to prove the defendant was guilty beyond a reasonable doubt); *Juan H. v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005) (remanding with instructions to grant a writ of habeas corpus because the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt—"an accused must go free unless and until the prosecution presents evidence that proves guilt beyond a reasonable doubt." (citation omitted)); *Kelly v. Roberts*, 998 F.2d 802, 809 n.11 (10th Cir. 1993) (granting immediate release from confinement when the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt and also observing that "prolonging . . . incarceration to allow the State time to file a petition for rehearing is unjust."); *Hopson v. Foltz*, 818 F.2d 866 (6th Cir. 1987) (granting a habeas petition when the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt).

Under the facts of this case I believe the petitioner has established a clear and indisputable right to be released from confinement and would grant his petition.

Judge HOLIFIELD joining.


                                    For the Court



                                    R.H. TROIDL
                                    Clerk of Court

8