OPINION OF THE COURT
BRUBAKER, Senior Judge:
The petitioner asks that we direct his immediate release from confinement through a Writ of Habeas Corpus. Because we find his continued confinement to be lawful, we decline to do so.
Background
A military judge sitting as a general court-martial convicted the petitioner, contrary to his pleas, of rape and forcible sodomy in violation of Articles 120 and 125, Uniform Code of Military. Justice, 10 U.S.C. §§ 920 and 925. The military judge sentenced the appellant to seven years’ confinement, reduction to pay grade E-l, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.
On 14 July 2015, a panel of this court issued a decision finding the petitioner’s convictions factually insufficient and thus set aside the findings and sentence and dismissed the charges with prejudice. United States v. Clark, 2015 CCA LEXIS 287, unpublished op., 2015 WL 4239924 (N.M.Ct.Crim.App. 14 Jul 2015) (per curiam). On 13 August 2015, the Government requested en banc reconsideration of this decision, which we denied on 18 August. Despite the ruling in his favor, the petitioner has remained in confinement since his court-martial adjourned.
After the petitioner filed his Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus, the panel ordered the Government to show cause why the requested relief should not be granted. After responsive pleadings by both parties to the show cause order, we sua sponte decided to consider the case en banc. On 18 September 2015, we issued an order denying the writ but indicating an opinion would follow. On 21 September 2015, the petitioner filed a writ-appeal petition based on our denial with the Court of Appeals for the Armed Forces (CAAF).
Analysis
As neither party disputes, we have jurisdiction to consider this petition under the All Writs Act, 28 U.S.C. § 1651(a). Clinton v. Goldsmith, 526 U.S. 529, 534, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); Loving v. United States, 62 M.J. 235, 239 (C.A.A.F. 2005).
The United States Supreme Court instructs “that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.” Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Similarly, the CAAF has called the writ of habeas corpus the “traditional remedy for unlawful imprisonment.” Waller v. Swift, 30 M.J. 139, 142 (C.M.A. 1990) (citations omitted). This then is an assessment not of whether the petitioner has presented a meritorious case as to why he should be released, but rather whether his confinement is illegal. Because the petitioner’s continued confinement pending the Judge Advocate General (JAG) of the Navy’s decision to accept or to challenge this court’s decision is consistent with the procedures established within the UCMJ and sanctioned by binding precedent, we deny relief.
Unlike many civilian courts, military Courts of Criminal Appeals (CCAs) do not issue mandates; those are the JAGs’ purview as our decisions are not “self-executing.” In- *828 stead, a CCA decision remains “inchoate” until the appellate process is complete and the service JAG returns the case to an appropriate CA for action consistent with the final appellate decision. United States v. Miller, 47 M.J. 352, 361 (C.A.A.F. 1997).
The fact that a legal determination is based on factual sufficiency does not alter its inchoate nature. Like any legal determination, it is subject to appeal to the CAAF. While the CAAF is constrained regarding CCAs’ factual findings, it can still review findings of factual sufficiency to ensure the lower court applied the correct law. See United States v. Leak, 61 M.J. 234, 245 (C.A.A.F. 2005); see also, United States v. Nerad, 69 M.J. 138, 140 (C.A.A.F. 2010) (“while CCAs have broad authority under Article 66(c), UCMJ, to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal — not equitable — standards, subject to appellate review.” (citation omitted)).
An appellant has an interest in a favorable but inchoate CCA decision, but that interest “only becomes sufficiently weighty to warrant action” once the JAG has decided on a course of action (abide by the CCA ruling or challenge it before the CAAF) or his time for doing so has expired. United States v. Kreutzer, 70 M.J. 444, 446 (C.A.A.F. 2012). Regulations grant the JAG a concrete amount of time to make his determination— 60 days after the date of the CCA decision or 30 days after the CAAF has granted a petition for review. CAAF Rules of practioe and' prooedure Rule 19(b)(3). When the Government has timely sought reconsideration of the CCA decision, the 60 days is computed from the date of the CCA’s final action on the petition for reconsideration. Id., Rule 34(a).
Pending the JAG’s decision, “an accused remains in confinement because the opinion below is inchoate. This reflects Article 66(e), which does not require the [JAG] to provide the [CA] with notification and instructions to release the accused or conduct an ROM 305 hearing ‘unless’ there will not be further consideration by other authorities_” Miller, 47 M.J. at 361-62. Only after the JAG has had the opportunity to make his decision does “an accused’s interest in the favorable decision of the court below” require “either that the accused be released in accordance with that decision or a hearing on continued confinement be conducted under ROM 305.” Id. at 362 (citing United States v. Turner, 47 M.J. 348 (C.A.A.F. 1997) and Moore v. Akins, 30 M.J. 249 (C.M.A. 1990)).
Statutory provisions under Article 57a, UCMJ, reinforce this scheme and evince Congressional intent to provide those in the appellant’s position a process to determine the propriety of continued confinement only after the service JAG has had the opportunity to accept or to challenge a CCA decision. The first of these provisions is what is now Article 57a(a), granting discretion to a CA or other appropriate official to defer confinement until the sentence is ordered executed. Congress enacted this provision, originally as Article 57(d), to authorize prisoners a “means of release from confinement during appellate review” and in so doing provided “for the first time a procedure similar to release on bail pending appeal in the civilian courts.” Moore, 30 M.J. at 251-52 (citations omitted).
Even with Article 57(d), there was no explicit authority to defer confinement after the CA took action on a case. But in 1990, the United States Court of Military Appeals (CMA) considered a habeas corpus petition in a case where the appellate court below had ruled in favor of the petitioner, dismissing all charges and specifications. The case was pending CMA review following a JAG certification under Article 67(a)(2). Moore, 30 M.J. at 249-50. The CMA, citing Congress’s desire that “a practical means be made available to release accused servicemembers from confinement pending appeal in meritorious cases[,]” granted Moore’s petition and ordered his release pending completion of appellate review. Id. at 253.
In direct response to the Moore decision, Congress passed A-ticle 57a(c), providing that when a sentence to confinement has been ordered executed, but the case is pending review by the CAAF under Article 67(a)(2), “the Secretary concerned may defer further service of sentence to confinement *829 while that review is pending.” The Congressional Record summarizes the Moore holding as directing a prisoner’s release “from confinement pending the government’s appeal unless it can be shown that the accused is a flight'risk or a potential threat to the community....” 141 Cong Rec S 5805 § 557 (April 27, 1995). To codify this ruling, Congress gave Service Secretaries the ability to “defer the service of an accused’s confinement when a [JAG] orders a case reversed by a [CCA] to be sent to [the CAAF] for further review under article 67(a)(2).” Id. This evinces Congressional intent to restrict the option of Secretarial deferment until after a case is certified to our higher Court.
As illustrated in Miller and Kreutzer, ever since Moore and the enactment of Article 57a(c), the CAAF has consistently held that a CCA opinion favorable to a service member does not entitle him to be released or to the equivalent of an R.C.M. 305 hearing until the JAG has had the opportunity to send the ease to the CAAF. This, we believe, is in recognition of the JAG’s executive role and the finite period of time betweén a CCA decision and action by the JAG — in contrast to the relatively lengthy and indefinite period of time for the CAAF to consider the merits of an appeal.[2] See Miller, 47 M.J. at 361-62.
The Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus is, accordingly, DENIED.

. We acknowledge that since Miller and Kreutzer were decided, the time allowed for JAGs to send cases to the CAAF has expanded from 30 to 60 days. But this does not change our analysis of Congressional intent and CAAF precedent supporting that an appellant may remain in confinement pending the JAG’s decision on a CCA ruling favorable to him. And in Kreutzer, despite 110 days elapsing between the CCA decision and JAG certification, even the dissent did not believe that Kreutzer was entitled an R.C.M. 305 hearing until the date of JAG certification. Kreutzer, 70 M.J. at 450 (Erdmann, J., dissenting).